DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY.

### JUNE TERM, 1882.

---

ASSESSORS OF TAXES OF THE CITY OF RAHWAY v. STATE, EX REL. MUNDAY.

1. When a municipal corporation, having a general power to levy taxes to pay its debts, enters into a contract, the legislature cannot take away or substantially impair such taxing power, so far as relates to such contracts.
2. In such case, if the corporation refuses to exert its taxing power in favor of such contractor, a *mandamus* to compel such action is a right which cannot be taken away or impaired by subsequent legislation.
3. The city of Rahway, having this power to tax, issued certain bonds; a holder of some of such obligations proceeded under the act of 1878, after obtaining judgment, to serve a copy of his execution on the assessors of the city, who refusing to assess the sums so due, the judgment creditor applied for a *mandamus*. *Held*, that he was entitled to such writ, the act of 1880, restricting the use and effect of the writ of *mandamus*, being held to be unconstitutional.

---

On error to the Supreme Court. For opinion of Supreme Court, see 14 *Vroom* 338.

For the plaintiffs in error, *Garret Berry* and *Thomas N. McCarter*, (with whom were *Frank Bergen* and *John F. Dillon* and *Wager Swayne*, of New York.)

By the writ of error in the above case and two others, the judgments of the Supreme Court awarding writs of *mandamus* to be directed to the plaintiffs in error, are brought into this court for review.

The application to the Supreme Court was for a writ of *mandamus* to compel the plaintiffs to assess the amount of a judgment recovered by the relator against the mayor and council of Rahway, on the ground that such duty was imposed on the plaintiffs in error by the supplement to the act respecting executions, passed March 27th, 1878. *Pamph. L.* 1878, *p.* 182. An alternative *mandamus* was issued, to which plaintiffs in error made a return, setting up proceedings under the act entitled " A further supplement to an act entitled ' An act for the better regulation of proceedings upon writs of *mandamus*,' " which further supplement was passed March 3d, 1880. *Pamph. L.* 1880, *p.* 102.

To this return the relator demurred, and the demurrer was sustained by the court on the sole ground that the act of 1880 was unconstitutional in two particulars: One, that it deprived the relator of a remedy for the enforcement of his contract, which existed when the contract was made. The other, that it sought to impose upon the Supreme Court the performance of duties not judicial, but legislative.

It is respectfully submitted that the Supreme Court erred in both of these positions, and that the act of 1880 is not in violation of either of these provisions of our constitution.

I. The act of 1880 does not deprive relator of any remedy for the enforcement of his contract which existed when it was made. The fallacy of the argument of the Supreme Court consists in confounding the right of the relator to apply for a *mandamus*, with his right to have it awarded to him.

The whole argument of the learned justice who delivered the judgment of the Supreme Court, is based on the idea that

the relator was entitled to the writ of *mandamus* as a matter of right.

The writ of *mandamus* is not a writ of right, but its allowance or disallowance rests in the discretion of the court, to be exercised in view of all the circumstances of the case.

It is a prerogative writ, and the court has power to issue or withhold it, according to its discretion. And if issued, it would manifestly be attended with hardships and difficulties, the court may and even should refuse it. *Tapping on Mandamus* 4, 18; *Moses on Mandamus* 18; *Ex parte Fleming*, 4 *Hill* 581; *Proprietors of St. Luke's Church* v. *Slack*, 7 *Cush.* 239.

In *Clark* v. *Jersey City*, 13 *Vroom* 94, Justice Knapp says: "The writ of *mandamus* cannot be claimed by the relator as his right. *The court, in its discretion, will refuse it, if circumstances appear which render the justice or propriety of its allowance doubtful.*" In that case the court refused the writ because of the delay in applying for it, although no statute of limitations barred it *State* v. *Readington*, 7 *Vroom* 66.

The court will refuse the writ if it sees that it must ultimately fail. *Tapping on Mandamus* 15; *Rex* v. *Bateman*, 4 *B. & Ad.* 533, per Lord Denman, C. J.

The court will not grant the writ if it will produce confusion or disorder, or be vexatious. *Rex* v. *Ely*, 1 *W. Bl.* 59; *S. C.*, 1 *Wils.* 266; *Reg.* v. *Bridgeman*, 10 *Jur.* 159; *Bugby Charity Trustees, ex parte*, 9 *D. & R.* 214.

Again, it is well settled that a writ of *mandamus* will not issue when the applicant for it has another specific legal remedy. *Apgar* v. *Trustees*, 5 *Vroom* 309; *Elmendorf* v. *Board of Finance of J. C.*, 12 *Vroom* 137; *Cleveland* v. *Board of Finance of J. C.*, 10 *Vroom* 631; *State* v. *Township Committee of Union*, 8 *Vroom* 84; *Rex* v. *Nottingham Water Works*, 6 *Ad. & E.* 358; *King* v. *Margate Pier Co.*, 3 *B. & Ald.* 221; *Shipley et al.* v. *Mechanics' Bank*, 10 *Johns.* 484; *Ex parte Nelson*, 1 *Cowen* 423; *People* v. *Brooklyn*, 1 *Wend.* 324; *King* v. *Bishop of Chester*, 1 *T. R.* 404.

At common law, and in New Jersey before the statute of

1870, (*Rev.*, *p.* 630, *pt.* 5,) a writ of error would not lie on the award of a writ of *mandamus*. *Layton* v. *State*, 4 *Dutcher* 575.

It will not now lie if, the court, in its discretion, refuses to allow the writ.

The same rule obtains still in regard to the allowance of a writ of *certiorari*. *State* v. *Wood*, 3 *Zab.* 560; *State* v. *French*, 4 *Zab.* 136.

The court, of its own motion at the present term, dismissed a writ of error, because it brought here for review the action of the Supreme Court in dismissing a writ of *certiorari*. See the language of Green, C. J., in *State* v. *Wood*, 3 *Zab.* 564.

This is equally applicable to an application for a writ of *mandamus*.

In view of these well-settled principles, the writ of *mandamus* was never a remedy to which a party had a right, even in cases where the writ was an appropriate remedy.

His application for it was always subject to be denied, for reasons founded on no rigid rules, but in the discretion of the court, exercised on the circumstances of each particular case.

If, then, in the present case, the act of 1880 had not been passed, and the relator had applied for *mandamus*, and on a rule to show cause the assessors had shown as a reason for refusing the writ, the very matter which the act of 1880 directs to be inquired into, can any one doubt that it would have been competent for the court to have given effect to such matters, and to have denied the writ on the ground of the disorder or confusion that it would occasion, or because of the undue priority and advantage the relator would obtain over other equally meritorious creditors, or because it was manifest to the court that it would not only ultimately fail of its purpose, but would also destroy the city government?

It is equally true that in such case the relator would be absolutely without redress, for no writ of error or appeal would be allowed him.

Is he, then, deprived of a remedy for the enforcement of his contract when the legislature simply directs the court to do

what it always might have done without such direction, and, having done it, the relator had no legal ground of complaint?

When, therefore, the legislature, in any given class of cases, only makes imperative what was discretionary before, it in no proper sense deprives him of a remedy which existed when the contract was made. 2 *Story on the Const.*, § 1385 ; *Potts* v. *N. J. Arms and Ord. Co.*, 2 *C. E. Green* 395.

The relator is not deprived of his substantial remedy, and that is all the constitution forbids.

II. The writ of *mandamus* is not and never was in any proper sense a " remedy for enforcing a contract," so as to be within the constitutional prohibition.

The prohibition clearly has reference to remedies for the redress of private wrongs.

A *mandamus* is not such a proceeding.

It was so decided in the case of *Layton* v. *State*, 4 *Dutcher* 575, above cited.

It is an elementary rule that the writ of *mandamus* is not applicable to the redress of private wrongs. *Moses on Mandamus* 177 ; *Ex parte Robbins*, 7 *Dowl. P. C.* 566 ; *Rex* v. *Clear*, 4 *B. & C.* 901 ; *Rex* v. *Montacute*, 1 *W. Bl.* 61 ; *S. C.*, 1 *Wils.* 283 ; *Tapping on Mandamus*, p. 4, note (a), pp. 5, 11, 66. See *Rex* v. *Cowle*, 2 *Burr.* 855, where a distinction is taken between suits between party and party, and these high prerogative writs. *Com. Dig.*, *tit.* " *Mandamus*," *A ;* *King* v. *Barker*, 1 *W. Bl.* 352; *Rex* v. *Payn*, 6 *Ad. & E.* 397.

Lord Denman, C. J., said : " It is enough that a *public duty is left unperformed by a public officer*, keeping back documents of which he obtained custody in that character."

In *King* v. *Clear et al.*, 4 *B. & C.* 899, Holroyd, J., said : " In *Com. Dig.*, *tit.* ' *Mandamus*,' *A*, it is stated that the writ of *mandamus* is granted to prevent the failure of justice, and for the execution of the common law, or of a statute, or of the king's charter ; *but not as a private remedy to the party.* The applicant not having stated the grounds upon which he desires to inspect the books, has not brought himself within that

rule for granting a *mandamus. His right as a parishioner is a mere private right, for which the court will not grant it.* * * * *Inasmuch as I think the party should have pointed out some public ground* for the court to proceed upon, and has not done so, this rule must be discharged."

The primary and appropriate office of the writ is to compel the performance of a public duty, and although it may sometimes happen that the right to have a public duty performed, has originated in a contract, and so the writ may operate to enforce a contract, it is only incidental and exceptional, and does not bring the proceedings within that class of remedies which the constitution describes as existing for enforcing a contract. See the language of Beasley, C. J., in *State* v. *Union Township,* 8 *Vroom* 86, 87; *Elmendorf* v. *Jersey City,* 12 *Vroom* 135.

This constitutional provision must have a reasonable construction, and it will not be stretched so as to cover a class of cases not fairly within its purview; nor will it be so construed as to prevent the legislature from regulating the use of this high prerogative writ because it sometimes happens to operate as a means of enforcing a contract, although it is in no sense a remedy for any such purpose. See, also, *Shipley* v. *Mechanics' Bank,* 10 *Johns.* 484; *People* v. *Parkerville Coal Co.,* 1 *Abb. Pr.* 128; *S. C.,* 10 *How. Pr.* 543.

When the learned justice who delivered the opinion of the Supreme Court declared " that the writ had become substantially a private remedy in these cases," it is respectfully insisted that he ignored the whole course of judicial decision on that subject.

The court was never bound to allow it, if, in its operation, it would work confusion or injustice; and if, for such reasons, it refused to allow it, the applicant for it had no redress. On this point see, especially, a learned note to the case of *Fish* v. *Weatherwax,* 2 *Johns. Cas.* (2d ed.) 217, and the cases there cited.

III. The Supreme Court erred in holding that the act of 1880 was in violation of the third article of the constitution,

Rahway v. Munday.

relating to the distribution of the powers of government, cited in the opinion of Mr. Justice Dixon, on page 27 of the case.

The argument of the learned justice and the authorities cited by him, if followed to their legitimate extent, prove too much.

If it be true that the authority to tax necessarily falls to the legislative department, and that, as a general rule, the taxing power has been treated by the judiciary as vested in the absolute discretion of the legislative bodies—

If it be true, as declared in this opinion, that "all the judges concur in the view that the power of taxation is legislative, that the laying of taxes is not a judicial act, *but one which belongs to the legislative department exclusively, to be performed upon considerations of policy, necessity and the public welfare*"—

Where does the court get the power to declare that the taxing power of the city of Rahway shall be set in motion to raise the sum of money, when the legislative department, to which this question exclusively belongs, has never ordered the raising of any such tax?

The city charter, section 47, confers upon the common council power to raise by tax in each year such sum or sums *as they shall deem expedient* for the payment of the interest upon the city debt, and such part of the principal thereof as may be due and payable—and section 48 makes it the duty of the assessor to assess only the sum so required.

If we accept the premises laid down by the Supreme Court, the question of how much is expedient to be raised for the purposes mentioned, is referred to the common council. It is a purely legislative question, and their decision is final. *Tidewater Co.* v. *Coster*, 3 *C. E. Green* 521, 522. Considerations of policy, necessity and the public welfare have led them to withhold the direction to the assessors necessary to enable them to levy this tax.

By what authority does the court reverse that decision and direct that an arbitrary sum shall be raised without the slightest regard to those considerations of policy, necessity and

the public welfare, on which the determination of such a question depends? *A fortiori*, by what authority do the courts assume so to direct, when the legislature, confessedly having jurisdiction over the subject, has expressly enacted, by the act of 1880, that no more shall be raised than the obvious considerations of public policy, regarded in the act, will warrant?

The argument drawn from the supposed incapacity of the court to deal with questions of this character, can have no weight in this case.

Many other cases can be shown where the legislature has conferred upon the courts powers analogous to this, and they have always been sustained when challenged.

A notable instance is the act entitled "A general act respecting taxes, assessments and water-rates," approved March 23d, 1881. *Pamph. L.* 1881, *p.* 194. An examination of the powers conferred and duties imposed by this act shows that the court must consider all the matters left to them by the *mandamus* act of 1880, and the act gives them the power to lay and assess taxes, and gives to their action the same effect as if the tax had been, in the first instance, levied, assessed or imposed by the proper taxing authority.

This law, I understand, has been recently sustained by the Supreme Court at the last term.

Another example is found in the supplement to the charter of the city of Newark, approved March 11th, 1875. *Pamph. L.* 1875, *p.* 249.

This law has been acted on for six years, and millions of dollars have been assessed and collected under it, and yet the learned judge who performed the duties under it, all of which invoke the exercise of the taxing power, never dreamed that he was violating the constitution of the state in exercising the power thereby conferred.

A question somewhat similar was raised under an act of the legislature of this state for bonding townships in aid of the Montclair railway. *Pamph. L.*, 1868, *p.* 889.

That act was held constitutional, both in the Circuit and

Supreme Courts of the United States, although the point was expressly raised that the duties of the commissioners were within the legislative department, and the legislature could not, under the constitution of New Jersey, confer the appointment of such officers on the judiciary. *Pompton* v. *Cooper Union*, 11 *Otto* 196.

A similar law was passed in the same year in aid of the Passaic Valley and Peapack Railroad Company. *Pamph. L.* 1868, *p.* 915. Here a power to appoint the commissioners was vested in the Circuit Court.

Of a like character is the act entitled " An act to adjust unpaid assessments in Jersey City." *Pamph. L.* 1873, *p.* 442. Many other examples could, doubtless, be cited.

In short, if the constitutional provision now applied to the case in hand is properly applied, it will uproot many of the most salutary laws of the state, which have passed the scrutiny of this court repeatedly.

IV. There is another error apparent in the record. The fifth section of the act of 1880 directs that all the pending applications shall be consolidated and treated as one proceeding, and that one writ of *mandamus* alone shall issue upon all the applications on which the court shall determine a writ should issue. The court, by directing a separate writ in each case, has disregarded the directions in this section. This part of the act has no necessary connection with the preceding sections and should be enforced, even if the preceding sections were found to be unconstitutional. It is well settled that the unconstitutionality of part of an act does not render the whole invalid, unless they are all so connected together that the whole must stand or fall together.

The rule of practice prescribed by this section is a salutary and convenient one, and is capable of being applied to the cases now before the court, even if some portion of the act is held to be unconstitutional. There would be no difficulty in giving effect to this section to the cases under consideration if it had stood alone as an independent act, and it in no wise

depends for its enforcement upon the validity of the preceding sections. This court has repeatedly recognized the doctrine above stated by holding certain parts of a law to be good while other parts were held unconstitutional. The court committed an error in not consolidating these three cases, and dealing with them all as one case. *Payne* v. *Mahon*, 12 *Vroom* 292; *Rader* v. *Township of Union*, 10 *Vroom* 509.

A. Municipal bonds are contracts *sui generis*. The remedy to enforce payment is absolutely under the control of the legislative department, and subject to such changes as properly follow legislation for the public welfare. *Merewether* v. *Garrett*, 12 *Otto* 472; *Lyon* v. *City of Elizabeth*, 14 *Vroom* 158; *W. S.* v. *R. R. Co.*, 17 *Wall.* 329; *Beers* v. *Arkansas*, 20 *How.* 527; *Hernsacker* v. *Borders*, 5 *Cal.* 288.

B. No such vested rights can be obtained in general laws providing for taxation as will prevent the legislature from changing those laws at any time by virtue of its sovereign control over the subject.

C. Contracts which depend on taxation for payment, are subject to such changes of remedy as result from alterations of the law of taxation, and such alterations do not deprive parties of their remedies within the meaning of the constitution.

D. All contracts are subject to assessment laws and insolvent and bankrupt laws, and it is competent for the legislature at any time to marshal the assets of any insolvent corporation, municipal or otherwise, for equitable distribution. These bonds are what are termed assessment bonds, and were made dependent upon the collection of assessments, and not upon general taxation of the city at large, for their payment.

For the defendant in error, *Alan H. Strong*.

The assignments of error present the question whether the return was sufficient.

The alternative writ is not attacked.

The sufficiency of the return depends wholly upon the supplements to the *Mandamus* act, found in *Pamph. L.* 1880, *p.* 102.

We say that the act is unconstitutional for three reasons.

I. Because it is in conflict with article IV., section 7, ¶ 3, of the constitution of this state, which forbids the passage of any law "impairing the obligation of contracts or depriving a party of any remedy for enforcing a contract which existed when the contract was made," and also with the similar prohibition contained in article I., section 10, of the constitution of the United States.

*First.* The remedy at the date of the contracts.

By the amended charter of the city of Rahway, (*Pamph. L.* 1865, *p.* 499, § 47,) the power to tax was conferred upon the common council, limited only as to the purposes there enumerated, for which it might be exercised.

Among others are the following: "For the payment of interest upon the city debt and upon temporary loans, and such part of the principal thereof as may be due and payable," and "for the contingent expenses of the city; and for all other objects and purposes authorized by this act."

The power so conferred would be extended by implication to every purpose for which the city could lawfully incur indebtedness. *Shackelton* v. *Guttenberg*, 10 *Vroom* 660; *Loan Association* v. *Topeka*, 20 *Wall.* 655; *U. S.* v. *New Orleans*, 8 *Otto* 381; *Goelet Estate* v. *Elizabeth*, *N. J. L. J.* 1880, *p.* 14.

The power of taxation is without limit as to the extent to which it may be exercised for a lawful purpose. *Weston* v. *Charleston*, 2 *Pet.* 449, 466; *McCullogh* v. *Maryland*, 4 *Wheat.* 430; *State, Trenton Water Power Co., pros.,* v. *Parker, Rec'r*, 3 *Vroom* 426, 435; *Cooley's Const. Lim.* \*479, &c.; *Hanson* v. *Vernon*, 27 *Iowa* 28; *Stewart* v. *Supervisors*, 30 *Iowa* 9; *Weister* v. *Hade*, 52 *Penna. St.* 474; *Gibson* v. *Mason*, 5 *Nevada* 283; *Cheney* v. *Jones*, 14 *Fla.* 587; *State, Baldwin, pros.,* v. *Fuller*, 10 *Vroom* 576, 577

Rahway v. Munday.

The recovery of the judgments recited in the alternative writ conclusively established three things :

1. The existence and amount of the debt.

2. A co-extensive power of taxation therefor.

3. A duty to exert this power.

The remedy by *mandamus* at common law to compel taxation under such circumstances, upon the return of execution unsatisfied, was indisputable. *High on Ex. Rem.*, § 377 ; 2 *Dillon on Mun. Corp.* (3d ed.), § 849 (685) *and notes ; Cooley on Taxation* 524, *and cases ; U. S.* v. *New Orleans*, 8 *Otto* 381 ; *Rader* v. *Road District*, 7 *Vroom* 273, 282 ; *Shackelton* v. *Guttenberg*, 10 *Vroom* 660 ; *Lyon* v. *Elizabeth*, 14 *Vroom* 158.

Neither the bankrupt condition of the city nor the claims of other creditors were any answer to the application for the writ. *City of Galena* v. *Amy*, 5 *Wall.* 705, 709, 710 ; *U. S.* v. *Jefferson Co.*, 5 *Dill. C. C.* 310, 324.

The only statute regulating the collection of judgments against municipal corporations in force in this state at dates of relators' contracts, (1875 and 1877), was the act of March 26th, 1845, found in *Rev., p.* 391, as section 9 of the Execution act.

This statute made it the duty of plaintiffs to seek payment in the first instance from the collector. But if, on service of the writ, there was no money in his hands applicable to it, and no source from which it could be expected to arise, the creditor could still put in motion the power to tax as at common law. *Shackelton* v. *Guttenberg*, 10 *Vroom* 660.

The relator then had an ultimate and contingent remedy by *mandamus* to compel taxation at the date of his contracts.

This remedy was modified in form by a supplement approved March 27th, 1878, to the act concerning executions, (*Pamph. L.* 1878, *p.* 182,) in accordance with which the relator has proceeded.

This supplement repealed section 9 of the Execution act by implication, (it was afterward *expressly* repealed, see *Pamph.*

*L.* 1879, *p.* 292,) and was valid as applied to relator's contracts. *Gabler* v. *Elizabeth,* 13 *Vroom* 79.

It was within the principle that the legislature may take away old remedies, substituting others equally efficient (*Rader* v. *Road District,* 7 *Vroom* 274; *Randolph* v. *Middleton,* 11 *C. E. Green* 543, 548,) or can modify subsisting remedies in matter of form. *Rader* v. *Road District, supra; Potts* v. *N. J. Arms, &c., Co.,* 2 *C. E. Green* 395; *Baldwin* v. *Newark,* 9 *Vroom* 158; *Newark Savings Inst.* v. *Forman,* 6 *Stew.* 436; *Scaine* v. *Belleville,* 10 *Vroom* 526; *Wilson* v. *Herbert,* 12 *Vroom* 454, 457, 458; *Baldwin* v. *Flagg,* 14 *Vroom* 495.

Before the act of 1878, as well as since, the only reliance of the creditor was the revenue of the city derived from taxation. *Lyon* v. *Elizabeth,* 14 *Vroom* 158.

The only change effected by the act is, that whereas before the creditor was entitled to be paid from funds collected by taxation for other purposes, now he is to be paid out of a levy made solely for him.

The remedy is not rendered *necessarily* less speedy. Whether or not it is so, will depend in each case upon the state of finances at the time of serving the execution.

In many cases the remedy given by the latter act would be more expeditious. *Gabler* v. *Elizabeth,* 13 *Vroom* 79.

This court cannot, in the absence of proof and in order to declare this act (of 1878) void, *assume* that its operation in this case was injurious to the relator.

And even if the relator had the right to treat the act of 1878 as void as to him, for the reason that it took away his right to look to the city collector in the first instance, the right was one that he could *waive.*

The legislature offered him as an immediate and absolute remedy, one which before he could employ only on a contingency. If he choose to adopt it who else can urge its illegality? With his assent the act conflicts with no rule of law. *Potts* v. *Delaware Water Power Co.,* 1 *Stockt.* 592, 619; *Randolph* v. *Middleton,* 11 *C. E. Green* 543, 548.

Whether the relator adopted the act of 1878 from choice

or from compulsion, the remedy is one to which he had before a contingent right to resort, and which existed at the date of the contracts for the enforcement thereof, and is, therefore, within the protection of the constitution.

*Second.* The effect of the act of 1880.

It not only deprives relator of an efficient remedy, but it impairs the obligation of the contract itself in several particulars.

1. The power of taxation which was before capable of being exercised at any rate necessary to produce the amount required, is, by this act, limited in this case to a rate barely sufficient to pay current expenses.    Similar legislation was condemned in the following cases: *Von Hoffman* v. *City of Quincy*, 4 *Wall.* 535 ; *Butz* v. *City of Muscatine*, 8 *Wall.* 575 ; *Wolff* v. *New Orleans*, 13 *Otto* 358 ; *Goodall* v. *Fennell*, 27 *Ohio St.* 426 ; *City of Galena* v. *Amy*, 5 *Wall.* 705 ; *U. S.* v. *Jefferson Co.*, 5 *Dill. C. C.* 310, 314.

2. In its operation it is precisely analogous to an exemption law, and is thus within the very mischief at which our peculiar constitutional provision was aimed.    *Rader* v. *Road District*, 7 *Vroom* 273, 280.   See, also, *Edwards* v. *Kearzey*, 6 *Otto* 595 ; *Gunn* v. *Barry*, 15 *Wall.* 610 ; *Johnson* v. *Fletcher*, 54 *Miss.* 628 ; *Wilson* v. *Brown*, 58 *Ala.* 62 ; *Homestead Cases*, 22 *Gratt.* 266 ; *Taylor* v. *Stockwell*, 66 *Ind.* 505.

3. It delays *unreasonably* the collection of the judgment. See *Webster* v. *Rose*, 6 *Heisk.* 93 ; *Cooley's Const. Lim.* *292 ; *Louisiana* v. *New Orleans*, 12 *Otto* 203, 207.

4. It deprives relator of his priority.    See *Martins* v. *Somerville W. P. Co.*, 3 *Wall., Jr.*, 206.

5. While it confers no power to raise more than enough to pay relator, it requires the court to divide the moneys so raised among all judgment creditors who shall apply.

" *May* " is here mandatory.    *Davison* v. *Davison*, 2 *Harr.* 169, 171 ; *Seiple* v. *Elizabeth*, 3 *Dutcher* 407 ; *People ex rel.* v. *Supervisors*, 51 *N. Y.* 401 ; *Supervisors* v. *U. S. ex rel.*, 4 *Wall.* 435.

II. The act is also in conflict with article III. of the state constitution, in that it attempts to confer upon the Supreme Court legislative functions.

The power of taxation is legislative in its character. *Cooley on Taxation* 34, 42, and authorities cited in opinion of court below.

It follows from this that under our constitution it cannot be conferred upon the judiciary. *Auditor* v. *R. R. Co.*, 6 *Kansas* 500; *Hardenbergh* v. *Kidd*, 10 *Cal.* 402; *Cooley on Taxation* 34, 48–50.

The inquiry as to the proper rate to be imposed, is manifestly involved in every act of taxation, and it is one upon which the courts have always declined to enter.

It depends upon considerations with which a court is not fitted to deal, but which address themselves peculiarly to the political department of the government. *McCullogh* v. *Maryland*, 4 *Wheat.* 430; *Linton* v. *Mayor, &c., of Athens*, 53 *Ga.* 588.

Before the act of 1880, the recovery of judgment conclusively established every fact necessary to make it the duty of the city to levy a tax for its payment upon service of a copy of the execution.

That this duty was a legislative one constituted no obstacle to a writ of *mandamus* to enforce its performance. There was no discretion to be exercised, either by the court or corporation, as to the amount to be raised.

But under this act it is very different. The duty which the court now has to enjoin is to levy by taxation, not any ascertained sum, but such sum as the court, sitting in the place of the legislative department, shall decide that the interests of other creditors will permit.

As to what amounts to delegation of legislative power. *Cooley on Taxation* 49 *and note, and p.* 50; *Auditor* v. *R. R. Co.*, 6 *Kansas* 500; *Hardenbergh* v. *Kidd*, 10 *Cal.* 402, (Op. by Field, J.); *State* v. *Field*, 17 *Mo.* 529; *City of Galesburg* v. *Hawkinson*, 75 *Ill.* 152; *State, Gaines, pros.*, v. *Hudson*

*Co. Ave. Com'rs*, 8 *Vroom* 12, 19; *State, McCloskey, pros.*, v. *Chamberlin*, 8 *Vroom* 388,

III. The third ground for declaring this act void is, that it impairs the jurisdiction of the Supreme Court secured to it by the constitution. *Art. VI.*, § 1; *Art. X.*, § 1.

The legislature cannot take from the Supreme Court the power to issue its prerogative writs. *Harris* v. *Van Derveer's Ex'r*, 6 *C. E. Green* 427; *Traphagan* v. *West Hoboken*, 10 *Vroom* 232; affirmed in this court for the reasons given below, 11 *Vroom* 193; *Jersey City* v. *Lembeck*, 4 *Stew.* 255; *Green* v. *Jersey City*, 13 *Vroom* 118.

Nor can the legislature withdraw from the operation of such writs any class of cases properly within their scope. *Traphagen* v. *West Hoboken*, 10 *Vroom* 232.

And that *mandamus* is the appropriate and only remedy to compel taxation by municipal corporations for the payment of judgments, is unquestionable. (See authorities on this point cited above.) The act itself recognizes its appropriateness.

By the act of 1878 (*Pamph. L., p.* 182,) it is in so many words made the duty of the assessors upon service of the execution to assess the amount thereof, &c., and it was their duty so to assess the whole in the *next* levy.

The act of 1880 in no wise repeals this direction.

The whole effect is to prohibit the court from compelling, by *mandamus*, the discharge of this duty beyond a certain amount.

The words are: "That it shall not be lawful to *require* any municipal corporation, by *mandamus*, to raise," &c.

The power to tax remains, as well as the duty enjoined by the act of 1878. The occasion for the exercise of the writ is still there, but the attempt is to take away the power to issue it.

That the act does not *entirely* deny the writ, can make no difference. Any legislation that would leave the power of the court to issue the writ less than commensurate with the duty to be enforced, is within the principle of the cases cited.

If the legislature can deny the power to compel taxation to

the full amount in the first year, it can deny the power so to use the writ at all. If it can deny the writ in this class of cases, so it can in all others. And if it can thus abolish one writ, it can, in like manner, dispense with the rest, and thus destroy the court.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The relator, being a judgment creditor of the city of Rahway, applied to the Supreme Court for a *mandamus* to require the assessors of that municipality to levy the amount so adjudged to be due, in compliance with the supplement to the " Act respecting executions," approved March 27th, 1878, (*Pamph. L.* 1878, *p.* 182,) and that application having been granted, the object of this writ of error is to review that determination.

The supplementary act thus referred to, being the act upon which the action of the Supreme Court has been based, provides to the effect that when an execution shall have been issued against a municipal corporation, and there shall be no property whereon to levy, the officer authorized to execute such process shall serve a copy of the same, not only on the collector of such municipal corporation, but also on the assessor thereof, and it shall thereupon be the duty of such assessor to assess and levy, in addition to the regular taxes, the amount due upon the said execution, with interest, and that this tax shall be assessed and collected at the same time and in the same manner, and under the same conditions, restrictions and regulations as taxes for other purposes are required to be assessed and collected in such municipal corporation. The defendant in error having conformed in his proceedings under his judgment to the requirements of the law, and the assessor of the city of Rahway having refused to assess according to these statutory provisions, the sum so due, the Supreme Court adjudged such refusal illegal, and, the case having been heard on a return to an alternative writ of *mandamus,* ordered peremptory process to issue, commanding the assessor to make the assessment in question.

This judicial action is challenged by the counsel of the city of Rahway on two grounds: *first*, because the act of 1878, above referred to, has been repealed by subsequent legislation, and, *second*, because if such repeal has not obtained, still, under the circumstances of this case, the Supreme Court, in the exercise of its discretionary control over the process of *mandamus*, was legally bound to refuse to allow such writ.

First, then, with regard to the repeal of the supplement of the year 1878.

It is contended that this effect is the necessary result of the enactment of the act entitled "A further supplement to an act entitled 'An act for the better regulation of proceedings upon writs of *mandamus*,' passed the second day of December, one thousand seven hundred and ninety-four," approved March 8th, 1880. The regulations established by this law are to this effect: that whenever application is made for a writ of *mandamus* to require a municipal corporation to raise, by taxation, any judgment against it, the court to which such application shall be made shall, at the request of such municipal corporation, upon a rule to show cause, or upon affidavits, or otherwise, ascertain and determine, (1) the total indebtedness of such corporation, the time when payable, and the rate of interest payable thereon ; (2) the real value, for purposes of taxation, of the taxable property within such corporation; (3) the amount required to be raised within such corporation for necessary expenses for municipal and other purposes during the current year; and (4) the highest rate of taxation capable of being imposed on such corporation without injury to the interests of the creditors of the corporation whose claims are not yet due. The second section of this act is in these words: "That it shall not be lawful to require any municipal corporation, by *mandamus*, to raise for any such judgment, in any one year, more than such sum as, in addition to the amount found to be required for necessary expenses as aforesaid, will be raised in such municipal corporation by imposing the highest rate of taxation, as determined

in the manner aforesaid, and any sum ordered to be raised by taxation shall be included in the next annual tax levy for such municipal corporation." The third and fourth sections declare that the sum so ordered to be raised may be required to be paid into court, and may be distributed *pro rata* among creditors having judgments against said corporations; and that if the sum so ordered to be raised shall not discharge all the claims so proved, the court shall have the power to issue consecutive writs of *mandamus*, until the sums raised shall discharge such judgments.

The Supreme Court refused to execute this statute, on the ground that it deprived the defendant in error of a remedy for the enforcement of his contract on which his judgment is founded, existing at the time when such contract was made, and was, consequently, repugnant to the constitution of this state and to that of the United States.

In order to understand the question thus presented for our consideration, it is necessary to look at the legislation in force at the date of the transaction between these litigants, which subsequently took the form of the judgment in question.

It appears in this case, and it is admitted, that the debt which the defendant in error recovered against the city, accrued on four certain writings obligatory, and on certain interest warrants and coupons thereto attached, issued by the city of Rahway and under its seal, and delivered to the defendant on the 1st days of September and October, respectively, in the year 1875; as, therefore, it thus appears that the supplement to the Execution act, and which provided for an assessment in favor of a judgment creditor upon service of a copy of the execution on the assessor, was not passed until the year 1878, and was thus subsequent to the time of the contract, such supplement could be no bar to the enactment of this essentially inconsistent act of 1880. The pertinent legislation which was in operation on the 1st days of September and October, 1875, the dates of these contracts, was the following, viz., by section 47 of the charter of the city of

Rahway, which was passed in the year 1865, (*Pamph. L.* 1865, *p.* 490,) the power is conferred upon the common council of the city to raise by tax, in each year, such sum or sums as it may deem expedient, for (among other purposes) the payment of the interest upon the city debt, and such part of the principal as may be due and payable; and the next section makes it the duty of the assessors to assess the sums so required. Another law then existent was the act respecting executions, approved March 27th, 1874, which, in the ninth section, provides that whenever an execution shall be issued against the inhabitants of any city, in case of the absence of property to satisfy the same, a copy of such writ shall be served on the collector who is required to pay the same out of the first moneys belonging to the city which shall come to his hands.

It thus appears that at the point of time at which the defendant in error became the creditor of the city, his remedies, in default of payment of his debt, were these: first, seizure under execution on leviable property belonging to the city; second, service of a copy of his execution on the collector of the city, and payment out of the first corporate moneys coming to his hands; third, in case the city council refused to impose a tax in order to raise money to pay the judgment, an application to the Supreme Court for a *mandamus.*

As the first and second of these remedies have not in any wise been disturbed or affected by legislative interference, and as they are entirely inefficacious in the present instance, they will be laid out of the discussion. It is the third mode of redress, the municipal power of taxation enforceable by *mandamus,* which exclusively demands our attention.

By section 7, paragraph 3, of article IV. of the constitution of this state, it is declared that "the legislature shall not pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract which existed when the contract was made." This last clause relative to the remedy appears to

have but little, if it has any, force, for it has recently been decided by the Supreme Court of the United States in the case of *Louisiana* v. *New Orleans*, 102 *U. S.* 203, that the provision securing the inviolability of the contract, is as a necessary consequence, protective of the remedy, such construction being justified from the consideration that the obligatory force of a contract, in the constitutional sense, resides in its legal enforceability, and that when the contract is preserved from invasion, the means by which the parties to it can be compelled to observe its stipulations, are likewise, by inevitable implication, preserved. Whether we therefore regard this provision as it exists in the constitution of the United States, or as it exists in that of this state, the same inquiry is presented, viz., whether this statute of 1880 deprives this defendant of a remedy which was in force at the time he entered into these engagements with the city.

Assuming for the moment, for the purpose of exposition, that the authority to impose taxes in order to pay the public debts of the corporation, as it was lodged in the common council when these bonds were issued, was irrepealable, so far as related to past debts; that the defendant, as a creditor, had the legal right to require, by the means of a *mandamus*, such right of taxation to be put into effect in his favor, there would seem to be no reasonable ground for a doubt that this law of 1880, just referred to, is an invasion of the constitutional rights of the bondholder. Viewing the matter from the standpoint of the assumptions just stated, it would obviously follow that having originally a complete and highly effective remedy, the creditor has been turned over to a remedy utterly inadequate and altogether precarious; for, instead of a right to a judicial order upon the municipal authorities to raise, by taxation, the amount of the moneys due him, he is, by this later legislation, enforced to accept, from year to year it may be, a quota of such sum as a judicial tribunal may, in its discretion, declare can be realized from taxation without injury to the interests of creditors whose debts have not matured. The substitution of such a means of redress as this latter one

for the assumed right of the defendant to a *mandamus* enjoin-
ing the imposition of a special tax in his favor, would be so
clear an invasion of his constitutional prerogative, that, to
my mind, the subject will admit of no argument.   Such a
result will be assumed as a self-evident proposition ; and,
consequently, the only questions that are debatable are, whether
the municipal franchise to tax, and the right of a creditor to
a *mandamus* to compel its exercise, was, in a constitutional
point of view, beyond the sphere of subsequent legislation.

These are the issues which were the principal matters of
discussion before this court, and which have been treated with
much acuteness and force of reasoning in the briefs of the re-
spective counsel.

The first argument that was urged in behalf of the plaintiff
in error was, that the power to tax, with which this city
council was clothed at the dates of these contracts, was a dis-
cretionary power, the charter providing that this body, in each
year, should be empowered to raise such sum or sums of
money as it "should deem expedient" for the purpose desig-
nated.   It was insisted that this reference to the judgment of
the council as to the expediency of raising any given amount
of money in a particular year, put the matter entirely in its
discretion and removed it beyond the supervisory control of
the courts.   But the words thus emphasized are, in truth,
valueless for any legal purpose, for if they should be entirely
erased from the sentence in which they stand, the sense of the
clause would remain unaltered.   Every legislative grant to a
municipal body to exercise the power of local taxation, carries
with it, unless the terms of such grant are restrictive, the
authority to levy such an amount of moneys for the public
uses as such body may deem expedient.   In almost all instances
the sums to be raised are left to the judgment of the taxing
body.   But such judgment cannot be capriciously exercised,
and must be conformed to those standards of conduct which
are the acknowledged measures of legal obligation.   If it
seeks to violate such principles the judicial tribunals are bound
to intervene.   A municipality, so long as the ability and the

means of imposing and collecting taxes are left to it, cannot refuse to exercise such capacities simply on the ground that, under the circumstances, it finds it inexpedient to pay its debts. I have found nothing in the phraseology of this particular charter, in the respect in question, which has a tendency to distinguish it from the ordinary case of a municipality endowed, in the ordinary form, with a power to raise moneys for public uses by means of taxation.

Another consideration considerably pressed upon the attention of the court against the enforcement of the taxing power to pay this judgment was, that such judgment is founded on a bond which was issued to raise money to pay for municipal improvements, and that in the charter of this city there is a special provision that the costs of such improvements shall be assessed upon the owners of lands upon the line of the street so improved. It is true that such a provision is to be found in the charter of this city, but such provision, as is conclusively established by the existence of the judgment in this case, was not of such a character as to compel this creditor to resort to it as the sole means provided for the recovery of his debt. Had such been its effect, it would have afforded a defence to the action which has resulted in this judgment. Under the circumstances now exhibited, the inference is one of law that this bondholder, when he entered into his engagement with the city, had the right to look, for the repayment of his money, not only to the supposed ability of the municipal authority to impose a special tax on the lands benefited by the improvement, but, as well, to its other sources of revenue. That these bonds, even if they are to be assumed to be of the class known as improvement bonds, as was alleged by counsel, must now be held to have imposed a general liability upon this corporation, is plainly ruled by the case of *United States v. New Orleans*, 98 *U. S.* 381. But, in point of fact, the argument upon this head is as irrelevant as it is untenable, for there is nothing which appears in any wise before this court which serves to show that the debt, of which these bonds were the evidence, was in any respect connected with any local im-

provement whatever. All that this court can know upon this subject, as the case is here presented, is that this corporation became indebted to this defendant in error, and consequently gave to him those obligations on which he has obtained this judgment.

But it was further urged, in opposition to this judgment in the court below, that the writ of *mandamus* is not, in a constitutional sense, " a remedy for enforcing a contract," and that if it be such remedy it is a discretionary writ, and finally, that the power of taxation confided to a municipal corporation could, unless in certain exceptional cases, be withdrawn or modified at the pleasure of the legislature.

The proposition that the writ in question is not a remedy for the enforcing a contract is, it seems to me, plainly inadmissible. It is true that it is not one of the usual methods for that end, but it is one of the extraordinary instrumentalities. If a judgment should be obtained in an inferior court, and such court should refuse, without legal reason, to issue an execution upon it, the *mandamus* compelling such action would be as much a remedy for enforcing such contract as would be either the judgment or final process. And so in many other cases which might be enumerated. That a municipal corporation owing a debt will, under common circumstances, be compelled by the use of this power to procure the funds to defray such debt, is a well-known procedure, and in such instances I see no reason for the assertion that this writ is not strictly a remedy for the enforcement of an agreement. The contention is not countenanced by authority and is not sustainable.

With regard to the position that the writ is one resting in the discretion of the court, and that therefore it will not be issued when, on the whole, its effect would be detrimental to public interests, it is to be observed, in the first place, that a concession of the tenability of such position could not purge this act of 1880 from the taint of unconstitutionality. Even on the assumption designated, such act would impair the remedy, as its effect is to hem in and weaken the power of the

court, in the exercise of its authority by force of such writ. But for this statute the court, let us say, in its discretion, could order the whole of the judgment debt to be levied by taxation; by force of such statute only a certain amount of such debt could be authorized to be raised. It is manifest, therefore, that this statute of 1880 is as illegitimate, if the process of *mandamus* is to be regarded as discretionary, as it would be if we were to hold that such writ is a remedy enuring to a party as of absolute right. The consequence is, that with respect to the judicial discretion to be exercised in the present case, we would have to regard the question as qualified or conditioned by the provisions of the act of 1878, (and which is unrepealed if the act of 1880 is invalid,) which declares that when, under the circumstances mentioned, a copy of an execution shall have been served on the assessor of the city, it shall be his duty "to assess and levy, in addition to regular taxes, the amount due upon said execution." This legislative provision, it must be owned, vests in the judgment creditor a right to have his debt paid from the source specified; the statute makes no allowance for the pecuniary embarrassments or the insolvency of the corporation; the mandate of the act is, that in every case and in all situations, upon the requisite proceedings being taken the sum due must be assessed and collected. It is believed no precedent can be found of courts, upon a proper application, refusing to require an officer to discharge such a duty, so specific and remedial, with regard to a purely private right, as this. In the case of *City of Galena* v. *Amy*, 5 *Wall.* 705, it was urged that a *mandamus* should not issue to compel taxation in order to pay a judgment, on the ground of the largeness of the claim and the inability of the city to pay it, but the court rejected the plea, saying: "We can give no weight to considerations of this character when placed in the scale as a counterpoise to the contract, the legal rights of the creditor and our duty to enforce them." And such language would seem particularly appropriate in the present instance, when we have before us a statute giving the creditor a specified remedy to obtain satis-

faction of his judgment, for, in prescribing such remedy, it was for the legislature to define the exceptions to its use, if there were to be such. This has not been done. The act says, in every case the judgment creditor shall have an assessment made in his favor; is it competent for the court to say that he shall not have it in a certain class of cases? The scheme of the statute may, as applied to present circumstances, be an unwise one, but as it is the law it is difficult to see how the court can refuse to execute it. The allowance of the writ of *mandamus* is certainly, in some cases, an act resting in judicial discretion, but such right of judgment does not embrace the province of supervising legislative acts creating private rights, and of refusing, occasionally, to put them in force from motives of supposed expediency or public policy. It would be difficult to find any sanction in reason or in judicial decisions for such an exercise of judicial authority.

I turn, then, to the last exception taken to the proceedings in the court below, and that is that the taxing power of this city, as it existed at the time when these contracts were entered into, was repealable at the will of the legislature, and that, consequently, the modification of such power made by the act of 1880 was constitutional.

The argument on this branch proceeded on the ground that as the franchise to lay taxes was a part of the prerogative of the state, it could not be implied that a municipal corporation to which a portion of such prerogative was granted, had, by merely entering into a contract, imposed upon itself an obligation to use such franchise in the fulfillment of its stipulations. It was insisted that the cases in the United States court have gone no further than to hold that the legislative control over the municipal capacity to impose taxes continued untrammeled, except in cases in which such capacity had entered into the contract sought to be enforced by way of security for its performance, or where a judicial order had been made for the exercise of such power in a particular case, before its revocation by the legislature. It is not to be denied that this position has some color of legality from certain ex-

pressions appearing in the case of *Merriwether* v. *Garrett*, 102 *U. S.* 472, and if that were the last case in the Supreme Court of the United States treating of this subject, this topic of the argument would require grave consideration. But such is not the situation, for the decision referred to has been explained in the later judgment given in *Wolff* v. *New Orleans*, 103 *U. S.* 358. And, indeed, this last-named decision is, in all important respects, so pertinent to the inquiry now before this court, that it not only displaces the case of Merriwether *v.* Garrett from its position of being a possible authority in favor of the plaintiff in error, but must be held to have decided all the essential questions which were discussed on the argument in the present case. In the case of Wolff *v.* New Orleans, above mentioned, the general rules propounded are that laws are void which withdraw or restrict the taxing power of a city so as to impair the obligation of its contracts, made under a pledge, expressly or impliedly given, that it should be exercised for their fulfillment, and that a *mandamus* will lie to enforce it at the suit of the party to a contract who has no other adequate remedy. The facts giving rise to these resolutions were, in general, of the same character with those now under consideration. It was like the plan of the statute now in question, a legislative attempt to relieve an insolvent city from the pressure of its debts, and a *mandamus* was applied for to compel the exercise of the municipal power of taxation in favor of a judgment creditor. That judgment was on certain bonds which had been issued by the city by virtue of an act which made no provision for the use of the taxing power for the payment of the principal sum secured by such obligations. At the time of putting forth such contracts the city possessed a general power to raise moneys by taxation for the payment of its debts, and it was this power which, by the subsequent legislation, was sought to be controlled and narrowed. The decision of the court was that this latter law was void, inasmuch as it impaired the remedy to which the bondholder had the right to look when he became the creditor of the corporation. The following quotations from the opin-

ion of the court in this case will show its close pertinency on the present occasion: "The argument in support of the act," says the opinion, "is substantially this: that the taxing power belongs exclusively to the legislative department of the government, and when delegated to a municipal corporation may, equally with other powers of the corporation, be revoked or restricted at the pleasure of the legislature. It is true that the power of taxation belongs exclusively to the legislative department, and that the legislature may at any time revoke, at its pleasure, any of the powers of a municipal corporation, including, among others, that of taxation, subject, however, to this qualification, which attends all state legislation, that its action in that respect shall not conflict with the prohibitions of the constitution of the United States, and, among other things, shall not operate directly upon contracts of the corporation so as to impair their obligation by abrogating or lessening their means of enforcement. Legislation producing this latter result, not indirectly as a consequence of legitimate measures taken, as will sometimes happen, but directly by operating upon those means, is prohibited by the constitution and must be disregarded—treated as never enacted—by all courts recognizing the constitution as the paramount law of the land. This doctrine has been repeatedly asserted by this court when attempts have been made to limit the power of taxation of a municipal body, upon the faith of which contracts have been made, and by means of which alone they could be performed. So long as the corporation continues in existence, the court has said that the control of the legislature over the power of taxation delegated to it, is restrained to cases where such control does not impair the obligation of contracts made upon a pledge, expressly or impliedly given, that the power should be exercised for their fulfillment."

From these extracts from this opinion, it will be perceived that what is decided is this: that when a municipal corporation is in possession of a general power to lay taxes for the payment of its debts, and such corporation, so circumstanced, enters into a contract for the payment of money, such taxing

Rahway v. Munday.

power, by implication, is pledged as a security for the performance of such contract, and that, as a result, the taxing power so pledged cannot be curtailed or impaired by any subsequent legislation, so far as respects the party to such contract. As supplementary to these propositions, it was further held that the party claiming under such contract had the legal right to a *mandamus*, notwithstanding the alleged insolvency of the corporation, to enforce the city to exercise such taxing power in his behalf.

It is not perceived how this reported case is to be distinguished from the case now before us for decision, and as, upon the subjects involved, its determinations are of imperative and indisputable authority, such subjects must, as it is conceived, be considered to be *res adjudicata*.

With respect to the complaint that the court below refused to consolidate the proceedings in the several writs of *mandamus*, in conformity with the requisition to that effect contained in the act of 1880, it is sufficient to say that such matter has not been placed before this court by this writ of error. It is not shown that a motion to consolidate these cases was made in the Supreme Court, or that any judgment was passed with respect to that subject.

The judgment is affirmed.

*For affirmance*—THE CHIEF JUSTICE, DEPUE, KNAPP, SCUDDER, VAN SYCKEL, CLEMENT, COLE, WHITAKER, GREEN. 9.

*For reversal*—None.